UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. BABLER, et al., | ) | CASE NO.  1:08cv912 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| MALCOLM B. FUTHEY, Jr., et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving Doc. 90] |
| | ) | |
| | ) | |

This matter is before the Court on the Motion of Plaintiffs for a Temporary Restraining Order and/or a Preliminary Injunction ("Motion"). (Doc. 90.)  The Motion came on for a hearing on January 30, 2009.  The parties filed a stipulated motion to conduct the hearing via telephone, which the Court granted on January 29, 2009.  (Doc. 105.)   The Court has been advised, having reviewed the parties' briefs and having heard oral argument from all parties.[1]  For the reasons stated on the record and more fully set forth herein, Plaintiffs' Motion, which the Court has treated as a motion for preliminary injunction, is DENIED.

**I.  Factual Background**

This case arises from internal union charges brought against Plaintiffs by the members of the United Transportation Union (UTU) named in the Amended Complaint.  Plaintiffs allege that

---

[1] When the transcript from the hearing was docketed, Plaintiffs filed a Motion to Supplement (Doc. 109), which this Court granted.  In the motion, Plaintiffs cited a case name of which did not appear in the transcript, namely *Black v. Ryder/PIE Nationwide, Inc.*, 970 F.2d 1461 (6th Cir. 1992).  The Court has considered the case and has determined that it does not affect the Court's analysis, as set forth herein.

the charges result from their participation in litigation in this Court, namely Michael v. Thompson, 1:07cv3818 ("the Michael litigation").  Plaintiffs have moved for injunctive relief in order to prevent prosecution of the charges because, as they allege, they participated in the Michael litigation in order to promote the consummation of a merger between the United Transportation Union, of which each of the plaintiffs is an international officer, and the Sheet Metal Workers International Association.  They allege that this retaliatory prosecution of charges chills free speech and prevents their free participation in litigation, and that therefore the charges violate the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411.

In its Memorandum of Opinion and Order (Doc. 33) in this action denying Defendants' motion to dismiss, the Court set forth the facts necessary for the decision of the motion.  Those facts were as follows:

> Plaintiffs are members and international officers of the United Transportation Union ("UTU"), a labor organization governed by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411 et seq., under which Plaintiffs contend the Court has jurisdiction in this action. Plaintiffs John W. Babler, Victor Baffoni, Roy G. Boling, James R. Cumby, John D. Fitzgerald, and Costantino A. Iannone are International Vice Presidents and members of the UTU's International Board of Directors. Plaintiff James. M. Brunkenhoefer[2] is the National Legislative Director of the UTU and also serves on the International Board of Directors. Defendants are UTU International President Malcolm Futhey; the UTU Executive Board, which is responsible for hearing and deciding any internal charges brought against members of the UTU; each of the five members of the UTU Executive Board, namely James A. Huston, John J. Risch, Joseph A. Boda, Jr., Steven T. Dawson, and Kevin Goring; and three non-officer members of the UTU, namely David M. Murphy, James P. Jones, and Delbert Strunk.

> During the fall of 2007, the UTU, under the leadership of then-President Paul Thompson, attempted a merger with the Sheet Metal Workers International Association ("SMWIA"). A merger agreement was drafted and submitted to the membership for a ratification vote. The merger agreement as presented was approved by a majority of the members casting a vote.

---

[2] Mr. Brunkenhoefer has since passed away, all internal charges pending against him have been dismissed, and he is no longer a party to this litigation.  (Docs. 78, 79.)

Just after the vote was concluded, several members of the UTU challenged the merger in the Federal District Court for the Northern District of Ohio[3] on the basis that the vote was improperly conducted and members had not been given a copy of the proposed constitution governing the merged union in violation of the terms of the merger agreement. The plaintiffs in that litigation sought injunctive relief to block the merger, which was scheduled to be consummated on January 1, 2008. The Court granted the plaintiffs' motion for a temporary restraining order, and later granted their motion for a preliminary injunction.

In January 2008, at the same time the merger was to be consummated, the leadership of the UTU underwent a transition. Paul Thompson was replaced by Futhey as President of the UTU, and several other newly elected officers replaced those who had held office up to the end of 2007. The plaintiffs in the Michael litigation filed a motion to substitute Futhey for Thompson on January 4, 2008, which the Court granted on January 16, 2008. While Thompson had both sought and supported the merger with the SMWIA, Futhey opposed it, and his administration chose not to defend the merger in the Michael litigation. Plaintiffs in the instant matter opposed that decision and sought to intervene in support of the merger. Their motion was ultimately granted. They have since filed a motion to dismiss the plaintiffs' claims in the Michael litigation and are continuing to defend the merger.

Plaintiffs now allege that "false internal union charges" have been filed against them by UTU members led by three of the named Defendants and Defendant UTU Executive Board.  According to Plaintiffs, Roy Arnold, who is not a party to this action, filed charges against Thompson and Rick Marceau, who is also not a party to this action, on November 7, 2007. Arnold[] charged Thompson and Marceau with "intentionally conspir[ing] with other high-ranking officers to deceive the UTU Board of Directors, subordinate officers, and the membership by misrepresenting and withholding the exact terms and conditions of a proposed merger agreement between the UTU and the SMWIA." As a result, the charges read, "an illegal ballot was circulated to the membership under the appearance of a legitimate referendum vote." *Id.* Plaintiffs then cite to an email sent on the same day by Michael, lead plaintiff in the Michael case, referencing the charges brought and noting that those opposed to the merger should "move," and "take back [their] Union."  Ultimately the charges against Thompson and Marceau were withdrawn by Arnold.

Plaintiffs next allege that Defendant Murphy, a UTU member but not an officer, sent an email on February 27, 2007, instructing the recipients (who are not identified in the Complaint) to download the attached charges against "each of the

---

[3] The suit by the objecting members of the UTU was originally filed in the Northern District of Illinois but was shortly thereafter transferred to the Northern District of Ohio.

7 officers" and giving them instructions regarding the filing of those charges. The charges referenced were allegedly those brought against Plaintiffs, and included allegations of Plaintiffs' violation of provisions in the UTU Constitution, all of which concerned Plaintiffs' participation in the Michael litigation and their advocacy of the merger.

According to Plaintiffs, similar charges were filed against Futhey alleging that he had failed to act in the membership's best interests and had violated the UTU Constitution when he discontinued support of the merger agreement. Plaintiffs assert that Defendant Executive Board has held those charges in abeyance.

Plaintiffs assert that the charges filed against them were a result of their intervention in the Michael litigation and as part of an attempt by Futhey and "his allies" to discourage and prevent further defense of the merger.

*Babler v. Futhey*, No. 1:08cv912, 2008 WL 3822179 at *1-2 (N.D.Ohio Aug. 12, 2008). (Doc. 33 at 1-4).

The Michael litigation has been stayed pending the intervenors' appeal of this Court's decision granting the preliminary injunction. However, the parties have not agreed to any stay of this matter, and internal union trials of the charges against Plaintiffs are scheduled to begin on February 3, 2009.

## II.     Applicable legal standard

Rule 65 of the Federal Rule of Civil Procedure provides for a court to issue a preliminary injunction.

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted).

When considering a motion for preliminary injunction, a district court must balance four factors:

4

> (1) whether the movant has a strong likelihood of success on the merits;
>
> (2) whether the movant would suffer irreparable injury without the injunction;
>
> (3) whether issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

A district court is not required to make specific findings concerning each of the four factors if fewer than four would be dispositive. *See Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 862 (6th Cir. 1992); *Certified Restoration Dry Cleaning*, 511 F.3d at 542 (citing *Jones*, 341 F.3d at 476). "However, 'it is generally useful for the district court to analyze all four of the preliminary injunction factors." *Certified Restoration Dry Cleaning*, 511 F.3d at 542 (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000)).

## III.  Analysis

Plaintiffs argue that all of the factors operate in their favor and that the Court should enjoin the union from proceeding with the internal union trials.

### A.  Likelihood of success on the merits

In discussing this factor in the analysis of Plaintiffs' Motion, the Court will first set forth the parties' respective arguments, and will then address the case law cited in support of those arguments.

> In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success.  However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citations omitted) (citing *In re DeLorean Motor Co.*, 755 F.2d at 1229).

Plaintiffs contend that the pendency and prosecution of these charges is facially illegal under LMRDA § 101(a)(4), which reads as follows:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

29 U.S.C. § 411(a)(4).   The issue before the Court in this prong of the analysis for injunctive relief is whether Plaintiffs are likely to succeed with their argument that the charges themselves as well as the prosecution of those charges are violative of the LMRDA.

It is Plaintiffs' contention that this provision has been violated because the pending charges were brought to punish Plaintiffs for their participation in the Michael litigation in support of the merger.  They point to emails sent by those who were circulating and filing the internal charges against Plaintiffs that declared their intention of "shak[ing] some sense back into" Plaintiffs.  (Motion at 13; Doc. 90-9 at 1.)  They also cite to the charges themselves in which there are several references to their participation in the Michael litigation.  *See* Doc. 90-9 at 5-10.  Such references include that the charged officer "has taken legal steps to obstruct the

6

President of the UTU from protecting the rights of the general membership of the UTU," or that
"[b]y failing to allow the resolution of the court case as prescribed in the settlement offer
between the Plaintiffs and the UTU, [the charged officer] is causing irreparable harm and
increased costs to the membership while failing to meet his fiduciary responsibility to the
[UTU]."  (Motion at 13; Doc. 90-9 at 5-6.)   In addition, they reference a letter written to
Plaintiffs by Defendant Futhey as International President of the UTU in which he said, "I wonder
whether you might be better off to effectively moot the charges by terminating your efforts to
intervene, have the SMWIA intervene now . . . and provide support to the SMWIA by the form
of declarations."  (Motion at 8-9; Doc. 90-11.)

Plaintiffs argue that their right to participate in the Michael litigation is absolute and that
Defendants' attempts to block those efforts by means of allowing the pendency and prosecution
of these charges is plainly retaliatory and therefore a violation of the LMRDA.  Plaintiffs further
contend that, regardless of whether they ultimately prevail[4], they have a right to be free from
coercive actions within the union, and from the threat of losing not only their elected offices but
also their union membership.

Defendants counter that the charges were brought as a result of a pattern of misconduct,
only part of which was the participation in the Michael litigation, and none of which is protected
under the LMRDA.  They point to LMRDA § 101(a)(2):

> Every member of any labor organization shall have the right . . . to express any
> views, arguments or opinions . . . subject to the organization's established and
> reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing
> herein shall be construed to impair the right of a labor organization to adopt and
> enforce reasonable rules as to the responsibility of every member toward the
> organization as an institution and to his refraining from conduct that would
> interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2).

---

[4] The Court assumes that Plaintiffs refer to the ultimate adjudication of the Michael litigation.

Under this provision, Defendants argue, Plaintiffs should face charges for the part they played in what Defendants characterize as "egregious misconduct" and an effort to "destroy the organizational integrity of the union."  (Doc. 101 at 2.)[5]  Defendants point to the events surrounding the referendum vote on the merger and the Michael litigation as support for the internal charges brought against Plaintiffs.  According to Defendants, those events included:

- repeated misrepresentations by former-president Thompson and SMWIA President Sullivan about the future of the UTU, including claims that the constitutions of the UTU and the SMWIA did not conflict and that the UTU constitution would not change, when in fact there were a number of conflicts that would change the UTU constitution substantially

- misrepresentations about the survival of the UTU's craft autonomy, which the membership later learned would not be maintained;

- misrepresentations about future dues increases;

- threats by former president Thompson and SMWIA President Sullivan to continue the merger litigation until it bankrupts the UTU.

It is Defendants' view that Plaintiffs have participated in these activities by continuing to promote the merger and to condone the SMWIA's and former-president Thompson's misrepresentations, and that this amounts to dual unionism and a breach of Plaintiffs' fiduciary duties as officers of the UTU.  Defendants argue that, because Plaintiffs have allegedly abandoned their obligation to promote the best interests of the UTU, they ought to be subject to the charges brought by UTU members and to the UTU's prosecution of those charges, which is protected under § 101(a)(2) of the LMRDA.

---

[5] Defendants submitted three briefs—one each for President Futhey, for the executive Board and its individual members, and for the charging parties named as individual defendants.  Each brief incorporates the arguments of the other briefs, and each brief addresses part of the analysis of a motion for a preliminary injunction.  For that reason, the Court refers to Defendants as a group when discussing arguments that may have been made in one of the three briefs for Defendants, but will cite to the docket number of the brief where each reference may be found.

8

In support of their argument that the charges are facially illegal in that they hinder the right of access to the courts, Plaintiffs cite a series of cases, each of which is readily distinguishable from the case at bar.  For instance, both *Trbovich v. Mine Workers*, 404 U.S. 528 (1972), and *Donovan v. Westside Local 174, United Auto Workers*, 783 F.2d 616 (6th Cir. 1986), involved a plaintiff's intervention in post-election litigation brought by the Secretary of Labor. In both cases, the courts held that the plaintiff could intervene, and limited its holding to principle that such intervention was necessary for ensuring the democratic process in union elections.  The cases do not stand for the proposition that a union member has entirely unfettered access to the courts in all instances.

Plaintiffs rely upon *Hrometz v. Local 550 Ironworkers*, 227 F.3d 597 (6th Cir. 2000), for the proposition that a plaintiff's right of access to the courts is protected by the LMRDA, regardless of whether the plaintiff prevails in his position.  The procedural posture in *Hrometz* was very different from the case at bar: The plaintiff in *Hrometz* had undergone a trial at which disciplined was imposed and had appealed to an internal union board prior to his filing a federal suit, and the issue before the court was whether it was necessary for plaintiff to exhaust completely the internal union appeal process (which included two more levels of appeal after that which he had completed).  *Id.* at 598-99.  To the extent that Plaintiffs cite *Hrometz* in support of their argument that they should not be required to exhaust the union procedures at least as far as the hearings and imposition of discipline, the argument is not persuasive.

Moreover, the court in *Hrometz* discussed specifically the fact that "[its] holding does not prevent unions from establishing and maintaining effective internal grievance procedures" for reviewing the claims of their members. *Id.* at 602.  Therefore, while it may be possible for a

plaintiff to seek the intervention of the federal courts in a union dispute, Plaintiffs in this case have not demonstrated that such interference is proper.

The most compelling argument Plaintiffs make in support of this Court's intervention in union proceedings is based upon the idea that the pendency of internal union charges violates the LMRDA because it creates "anxiety, fear and opprobrium of disciplinary proceedings," quoting *Verville v. Int'l Assoc. of Machinists*, 520 F.2d 615, 620 (6th Cir. 1975).[6]  However, *Verville* involved a union's conducting an illegal strike against an employer.  The union and the employer executed an agreement that no union member would face discipline for crossing the picket line. *Id.* at 617.  The plaintiffs, who had crossed the picket line and were subsequently charged for their actions, sought to enjoin the hearings on those charges.  *Id.*

The court held that judgment for the plaintiffs was appropriate because the union and the employer had entered into explicit agreements that union members would be protected from fines or expulsion, as well as from the "anxiety, fear, and opprobrium of disciplinary proceedings." *Id.* at 620.  The Court acknowledges this holding by the Sixth Circuit, but would note two distinctions from the instant matter:  First, an explicit agreement was in place to protect the union members from any "anxiety, fear, [or] opprobrium," a fact that clearly had great weight in the courts' decision; second, the plaintiffs in *Verville* were rank-in-file union members, not union officers.

Defendants have addressed the issue of whether there is a difference under the LMRDA between union officers and rank-in-file members.  They have repeatedly noted that officers are held to a higher standard of conduct because of their fiduciary responsibility to the union and to

---

[6] While Plaintiffs do cite several other cases that authorized the injunction of union trials, those are not cases from the Sixth Circuit and are therefore not binding on this Court.

10

its members.  Furthermore, Defendants have presented evidence that the actions of Plaintiffs did operate to the detriment of the union and that Plaintiffs may have intended that result.

In support of the distinction between members and officers, Defendants cite to *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997) for the proposition that Title I of the LMRDA applies to union members as members, not to officers.  The *Harvey* court clearly distinguished between union officers and members and noted that Sixth Circuit precedent has clearly maintained that distinction, finding that disciplined officers cannot maintain suits under the LMRDA for actions taken against their office that did not ultimately affect their membership in the union.  *Id.* at 642-43.

Defendants have also countered Plaintiffs' arguments regarding alleged violations of the LMRDA by citing to *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102 (1982), a case Plaintiffs do not address.  While the Supreme Court was specifically reviewing the infringement of rights outlined in § 101(a)(2) of the LMRDA, it stated a general principal that is instructive in this matter.  After reviewing the legislative history of the precursor to Title I of the existing LMRDA, the Court found that Congress intended to create a law modeled on the Bill of Rights, but that subsequent legislation tempered the extremes of the original bill.  The Court concluded that

> the legislators intended § 101(a)(2) to restate a principal First Amendment value—the right to speak one's mind without fear of reprisal.  However, there is absolutely no indication that Congress intended the scope of § 101(a)(2) to be identical to the scope of the First Amendment.  Rather, Congress' decision to include a proviso covering "reasonable" rules refutes that proposition. . . . Union rules . . . are valid under § 101(a)(2) so long as they are reasonable; they need not pass the stringent tests applied in the First Amendment context.

*Sadlowski*, 457 U.S. at 111.  According to the *Sadlowski* Court, rules imposed by the union must be reasonable if they interfere with an interest protected in the first half of § 101(a)(2).  *Id.*  "The critical question is whether a rule that partially interferes with a protected interest is nevertheless

11

reasonably related to the protection of the organization as an institution." *Id.* at 111-12.  There is no reason to believe, based upon the language of the Supreme Court's decision, that § 101(a)(4) should be viewed as having the same scope as the First Amendment if § 101(a)(2) was found not to have such scope.  Indeed, the Supreme Court found in favor of reasonable union governance even when it restricted somewhat a member's speech in the form contributions to union campaigns from outside unions.

While the Court is not insensitive to Plaintiffs' concerns about the discipline they may face should the Executive Board decide the pending charges against them, it finds that, based upon Plaintiffs' evidence and arguments as well as the above analysis of relevant case law, Plaintiffs have not demonstrated that the union's actions in this instance are "unreasonable," nor have they demonstrated a likelihood of success on the merits of their argument that the charges are facially violative of the LMRDA.

There is no evidence at this point that the LMRDA will be violated as a result of the union's actions because there is no evidence that Plaintiffs' status as union members will in fact be affected.  *Harvey*, 113 F.3d at 642-43.  Furthermore, Plaintiffs' contention that § 101(a)(4) provides blanket protection to union officers to speak and to participate in litigation regardless of its effect upon the health of the union is unpersuasive, and does not address the right of the union to hear charges raised by members for actions of officers that are counter to the effective operation of the union, and to enforce reasonable rules meant to maintain the health of the union.

The Court is in no position at this point to pass judgment upon the underlying merits of the parties' respective positions.  When a record has been fully developed after the hearings are completed, the Court will be in a better position to weigh the evidence and determine the propriety of any discipline that may be imposed as a result of the hearings.  There is not yet

12

enough of a showing by Plaintiffs that their arguments regarding the legality of these charges will ultimately carry the day.  It is this question of likelihood of success on the merits that most sways the Court in denying Plaintiffs' Motion, but the Court will address the other factors as well.

> **B.      Irreparable harm**

The second factor to be considered by a court in addressing a motion for a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction.  *Certified Restoration Drycleaning*, 511 F.3d at 550.

> A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)[7] (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir.1992); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir.1984)).

Plaintiffs argue that the harm they suffer results from the pendency and prosecution of these charges, not just from any potential discipline.  They point to the loss of reputation and distraction from their duties as officers as evidence of this harm.  Furthermore, Plaintiffs claim that at least two of them may resign their positions as officers of the union rather than risk the loss of their retirement benefits.

---

[7] The *Overstreet* decision involved a plaintiff who was unable to demonstrate that he was likely to succeed on the merits of his claim that his right to privacy was violated.  The court therefore found his argument that he would suffer irreparable harm based upon that constitutional violation meritless.  In this instance, the Court has found that Plaintiffs have not made a showing that they are likely to succeed on the merits of their claim that the pendency of charges has violated the LMRDA because it is not convinced that the scope of the LMRDA is as broad as that of the First Amendment.  However, it will consider the irreparable injury factor nevertheless.

Once again, Plaintiffs rely upon the Sixth Circuit's decision in *Verville* to support their argument that illegal disciplinary charges inflict irreparable harm, even when trials have not yet been conducted, because it subjects the charged parties to "anxiety, fear, and opprobrium of disciplinary proceedings." *Verville*, 520 F.2d at 620. The Court has already distinguished *Verville* above, and would only reiterate that the union's bringing charges in *Verville* was expressly counter to an agreement between the union and the employer. In this case, the Court has not been convinced by Plaintiffs that the instant charges are anything other than an attempt by the union to engage in the type of self-governance that the Supreme Court has recognized is proper. *See Sadlowski*, 457 U.S. at 111. Were the Court to attempt to apply *Verville* with the assumption that any internal union charges put the charged parties at risk of "anxiety, fear, and opprobrium" and are therefore subject to injunction, clearly an absurd result would be reached and a union would be hard-pressed to discover a method of defending its internal governance procedures.

The Court recognizes the nature of Plaintiffs' claims and the gravity of issues of free speech within a union, as well as concerns of Plaintiffs that their livelihoods may be at stake and that there may have been damage to their credibility. However, evidence of *irreparable* harm has not yet been presented to the Court, nor have Plaintiffs presented sufficient evidence that irreparable harm is imminent should the hearings go forward. As Defendants note, it is possible that some Plaintiffs may be exonerated, a fact that must weigh in the Court's consideration of the question of Plaintiffs' alleged irreparable harm.

**C.**      **Harm to others/Public interest**

As the considerations for each of the remaining prongs are similar, the Court will combine its discussion of harm to others and the promotion of the public interest by means of

14

injunctive relief.  Plaintiffs claim that an injunction of the union trials will result in harm to no one because the merger has already been enjoined and Plaintiffs' continued service as officers can have no effect on that injunction.  The Court finds this a specious argument.

Clearly, Plaintiffs are well-acquainted with the argument that there are issues of credibility at stake when a governing body steps in to prevent the actions of an individual or another governing body.  They have made just that argument regarding the effect of the Executive Board's treatment of the pending charges on their own reputations.  However, they make no effort to understand that the argument applies at least equally well, if not better, to the Executive Board in the face of Plaintiffs' attempts to enjoin the internal union hearings.

The UTU Constitution, Article 25, provides that the union has the ability to conduct hearings regarding charges preferred against an international officer for failure to perform the duties and responsibilities of his office.  (Doc. 90-4).  Were the Court to enjoin these proceedings based upon the assertion or the assumption that the Executive Board is incapable of conducting a full and fair hearing of the charges, it would effectively be delivering an impeachment of the Executive Board's credibility similar to what Plaintiffs claim they have suffered as a result of the pending charges.  However, this Court's action would operate to prevent both a resolution on the merits and a more thorough development of the issues at stake.

For good reason, Courts are traditionally loath to interject themselves into unions' internal affairs or to hamper the unions in their ability to govern themselves.  Based upon the evidence put forward by Defendants in their opposition to Plaintiffs' Motion, Defendants have reason to believe that Plaintiffs have committed conduct that is not protected either by the UTU Constitution or by the LMRDA.  Without more evidence than has been produced by Plaintiffs

regarding the ability of the Executive Board to be fair and impartial, the Court cannot deprive the union of the ability to execute its internal grievance process.

Moreover, the precedent that would be set by such an action would result in the converse of Plaintiffs' alleged grievance:  the promise of free speech in the form of the bringing of internal union charges would be in danger of becoming illusory.  The individual members of the union – who are members of the public in the sense that they are not parties to these proceedings – have a right under the UTU constitution to bring charges against an international officer, as do members of other unions who could be affected in any future dealings with their unions by a decision from this Court to interject itself in this instance.  To enjoin the trials on the charges brought by the Defendant charging parties based upon what little evidence the Court now has would send a message to union members—both in the UTU and elsewhere—that they no longer enjoy any such rights.

**IV.    Conclusion**

For the reasons set forth herein, Plaintiffs' Motion is DENIED.


DATE:  February 2, 2009                    */s/ John R. Adams*_____
                                           Judge John R. Adams
                                           UNITED STATES DISTRICT COURT

16