UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. BABLER, et al., | ) | CASE NO. 1:08cv912 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | |
| MALCOLM B. FUTHEY, JR., et al., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) | [Resolving doc. 113] |

This matter comes before the Court on the Motion (Doc. 113) of Defendants Malcolm Futhey ("Futhey") and the individually-named Defendants David Murphy, James P. Jones, John England, Larry Barrilleaux, Bonnie Morr, Red Dare, L.P. King, Elizabeth Woodbridge, Ronald Clements and Gary DeVall (collectively "Charging Parties") to enjoin the receipt by Plaintiffs of financial support from the Sheet Metal Workers International Association ("SMWIA").

**I.      Factual Background**

Plaintiffs are members and international officers of the United Transportation Union ("UTU"), a labor organization governed by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411 et seq. Plaintiffs John W. Babler, Victor Baffoni, James R. Cumby, John D. Fitzgerald, and Costantino A. Iannone are International Vice Presidents and members of the UTU's International Board of Directors.[1] Defendants are UTU International President Malcolm Futhey; the UTU Executive Board, which is responsible for hearing and deciding any internal charges brought against members of the UTU; each of the five members of the UTU Executive Board named individually, namely James A. Huston, John J.

---

[1] Mr. Brunkenhoefer, formerly the UTU National Legislative Director and a member of the Executive Board, was a Plaintiff in this matter and has since passed away. All internal charges pending against him were dismissed and he is no longer a party to this litigation. (Docs. 78, 79.)

Risch, Joseph A. Boda, Jr., Steven T. Dawson, and Kevin Goring; and the Charging Parties, who are individually-named members of the UTU, each of whom has brought internal union charges against Plaintiffs.[2]

This matter and the related matter *Michael v. Thompson*, 1:07cv3818, have been the source of many orders from this Court that have reiterated the facts giving rise to these disputes, most recently the Court's Memorandum of Opinion and Order denying Plaintiffs' motion for a temporary restraining order or preliminary injunction, which recited the facts as follows:

> During the fall of 2007, the UTU, under the leadership of then-President Paul Thompson, attempted a merger with the Sheet Metal Workers International Association ("SMWIA"). A merger agreement was drafted and submitted to the membership for a ratification vote. The merger agreement as presented was approved by a majority of the members casting a vote.
>
> Just after the vote was concluded, several members of the UTU challenged the merger in the Federal District Court for the Northern District of Ohio[3] on the basis that the vote was improperly conducted and members had not been given a copy of the proposed constitution governing the merged union in violation of the terms of the merger agreement. The plaintiffs in that litigation sought injunctive relief to block the merger, which was scheduled to be consummated on January 1, 2008. The Court granted the plaintiffs' motion for a temporary restraining order, and later granted their motion for a preliminary injunction.
>
> In January 2008, at the same time the merger was to be consummated, the leadership of the UTU underwent a transition. Paul Thompson was replaced by Futhey as President of the UTU, and several other newly elected officers replaced those who had held office up to the end of 2007. The plaintiffs in the Michael litigation filed a motion to substitute Futhey for Thompson on January 4, 2008, which the Court granted on January 16, 2008. While Thompson had both sought and supported the merger with the SMWIA, Futhey opposed it, and his administration chose not to defend the merger in the Michael litigation. Plaintiffs in the instant matter opposed that decision and sought to intervene in support of the merger. Their motion was ultimately granted. They have since filed a motion

---

[2] The parties to this litigation have changed several times since its inception, to include the addition of several Charging Party Defendants; the dismissal of Charging Party Delbert Strunk, whose participation in the litigation ended when he dropped his internal charges and Plaintiff's Amended Complaint did not name him as a defendant (*see* Docs. 85, 79); the dismissal of several of the Charging Party Defendants who had earlier been added; and the dismissal of one of the Plaintiffs, Roy G. Boling, who retired his position rather than face internal union trials.

[3] The suit by the objecting members of the UTU was originally filed in the Northern District of Illinois but was shortly thereafter transferred to the Northern District of Ohio.

to dismiss the plaintiffs' claims in the Michael litigation and are continuing to defend the merger.

Plaintiffs now allege that "false internal union charges" have been filed against them by UTU members led by three of the named Defendants and Defendant UTU Executive Board. According to Plaintiffs, Roy Arnold, who is not a party to this action, filed charges against Thompson and Rick Marceau, who is also not a party to this action, on November 7, 2007. Arnold[] charged Thompson and Marceau with "intentionally conspir[ing] with other high-ranking officers to deceive the UTU Board of Directors, subordinate officers, and the membership by misrepresenting and withholding the exact terms and conditions of a proposed merger agreement between the UTU and the SMWIA." As a result, the charges read, "an illegal ballot was circulated to the membership under the appearance of a legitimate referendum vote." *Id.* Plaintiffs then cite to an email sent on the same day by Michael, lead plaintiff in the Michael case, referencing the charges brought and noting that those opposed to the merger should "move," and "take back [their] Union." Ultimately the charges against Thompson and Marceau were withdrawn by Arnold.

Plaintiffs next allege that Defendant Murphy, a UTU member but not an officer, sent an email on February 27, 2007, instructing the recipients (who are not identified in the Complaint) to download the attached charges against "each of the 7 officers" and giving them instructions regarding the filing of those charges. The charges referenced were allegedly those brought against Plaintiffs, and included allegations of Plaintiffs' violation of provisions in the UTU Constitution, all of which concerned Plaintiffs' participation in the Michael litigation and their advocacy of the merger.

According to Plaintiffs, similar charges were filed against Futhey alleging that he had failed to act in the membership's best interests and had violated the UTU Constitution when he discontinued support of the merger agreement. Plaintiffs assert that Defendant Executive Board has held those charges in abeyance.

Plaintiffs assert that the charges filed against them were a result of their intervention in the Michael litigation and as part of an attempt by Futhey and "his allies" to discourage and prevent further defense of the merger.

*Babler v. Futhey*, No. 1:08cv912, 2009 WL 250267, slip op. at *1-3 (N.D. Ohio Feb. 2, 2009)(quoting *Babler v. Futhey*, No. 1:08cv912, 2008 WL 3822179 at *1-2 (N.D. Ohio Aug. 12, 2008)). On February 3, 2009, after the Court's denial of Plaintiffs' motion for a temporary restraining order, the internal union trials began and were then suspended by the parties until May "due to scheduling conflicts." *See* Doc. 113-2 at 4.

The question now before the Court is whether, under § 101(a)(4) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 411(a)(4), Plaintiffs may be

3

enjoined from receiving financial support in the form of litigation funds from the SMWIA. Defendants argue that the SMWIA is an "interested employer" under LMRDA § 101(a)(4), and is therefore prohibited from being involved in this litigation. In short, Plaintiffs disagree.

## II. Applicable legal standard

Rule 65 of the Federal Rule of Civil Procedure provides for a court to issue a preliminary injunction.

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted).

> When considering a motion for preliminary injunction, a district court must balance four factors:
>
> (1) whether the movant has a strong likelihood of success on the merits;
>
> (2) whether the movant would suffer irreparable injury without the injunction;
>
> (3) whether issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."  *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

A district court is not required to make specific findings concerning each of the four factors if fewer than four would be dispositive. *See Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 862 (6th Cir. 1992); *Certified Restoration Dry Cleaning*, 511 F.3d at 542 (citing *Jones*, 341 F.3d at 476). "However, 'it is generally useful for the district court to analyze all four of the preliminary injunction factors." *Certified Restoration Dry Cleaning*, 511 F.3d at 542 (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000)).

### III.   Analysis

The basis of Defendants' argument is that LMRDA § 101(a)(4) of the LMRDA places restrictions upon employer funding of union members' litigation, as follows:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

29 U.S.C. § 411(a)(4).

Defendants contend that the SMWIA is an "interested employer" under the LMRDA because it is an employer as defined in § 102(e) of the LMRDA[4], and it has an interest in the outcome of the litigation. Therefore, Defendants argue, it should be enjoined from financing Plaintiffs' litigation against Defendants, and failure to do so will result in irreparable harm to

---

[4] "'Employer' means any employer or any group or association of employers engaged in an industry affecting commerce . . . which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees . . ." LMRDA § 102(e) (29 U.S.C. § 402(e)).

5

Defendants, including division of the union from within by means of expensive, time-consuming, and politically charged litigation.

Plaintiffs counter that Defendants cannot satisfy the equitable factors for receiving a temporary restraining order, in large part because the SMWIA is not even an employer under the LMRDA, much less an interested employer. They argue that the attempt to prohibit the SMWIA from financing Plaintiffs' litigation is a violation of the right of union members to associate with outside unions. Further, Plaintiffs challenge the procedure of using an affirmative defense as the grounds for enjoining the SMWIA's funding of Plaintiffs' litigation.

### A. Interested employer

In support of their argument that the SMWIA is an employer for purposes of LMRDA § 101(a)(4), Defendants cite the Sixth Circuit's decision in *Marshall v. Local Union 20*, 611 F.2d 645 (6th Cir. 1979), in which the court found that employers unrelated to a union conducting its election were employers for purposes of the LMRDA election provision, § 481(g). The Sixth Circuit held that employers who had contributed to the campaign of a candidate in a union election violated the LMRDA's prohibition against employer contributions even though several of those employers were non-union and none of the employers stood in a collective bargaining relationship with the union within which the candidate sought office. *Id.* at 652. It upheld the district court's decision that the candidate in question had received contributions that violated the LMRDA and declared the election void, requiring that a new election be held. *Id.* at 647-48.

The court strictly construed the language of the statute, which reads in pertinent part as follows: "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this title." 29 U.S.C. § 481(g). Based upon this language, the court reasoned that it could "find no indication that Congress intended to limit the scope of this section by confining the term 'employer' to those involved in a collective

6

bargaining relationship with the union . . ." *Marshall*, 611 F.2d at 651. Therefore, it concluded that "the term 'employer' as used in 29 U.S.C. § 481(g) refers to any employer as defined in 29 U.S.C. § 402(e)." *Id.* at 652.

Under *Marshall*, Defendants contend that the SMWIA must be considered an employer regardless of the fact that it is not in a collective bargaining relationship with the UTU. Although *Marshall* considers a different section of the LMRDA than is at issue here, Defendants' reasoning rests on the assumption that the term "employer" would not mean different things in different parts of the LMRDA, and that because the SMWIA fits the definition of "employer" set forth in 29 U.S.C. § 402(e), it is an employer under 29 U.S.C. § 401(a)(4).

Having argued that the SMWIA is an employer for purposes of § 101(a)(4), Defendants look to the Seventh Circuit's decision in *Adamszewski v. Local Lodge 1487*, 496 F.2d 777 (7th Cir. 1974) to establish that the SMWIA is interested in the outcome of this litigation. In *Adamszewski*, several rank-in-file union members sought to enjoin union disciplinary proceedings brought against them for having crossed the picket line during a sister union's strike. *Id.* at 779-80. Their employer, Northwest Airlines ("NWA"), paid their attorneys' fees in their action for injunctive relief. *Id.* The defendant union sought to dismiss the case on the grounds that an interested employer was paying the plaintiffs' attorneys' fees. *Id.* The plaintiffs appealed, and the Seventh Circuit Court of Appeals affirmed the district court's decision dismissing the case without prejudice to refiling without NWA's financial support. *Id.* at 779.

The *Adamszewski* court's focus was on whether NWA was an *interested* employer. The court considered the legislative history of the LMRDA, noting that the version of the bill that become law applied to

> interested employers only, the legislative history making it clear that employers
> such as those in the foregoing examples (i.e., banks, friend, or relatives who might

7

> also be an employer) were not included in the limitation which would apply only to employers who had a concrete interest in the litigation because of some relationship in the union other than the mere connection with the union member bringing the suit.

*Adamszewski*, 496 F.2d at 783.

The court went on to explain that "[f]rom this background of the relevant legislative history, it is clear that Congress meant to prohibit an employer from financing a suit by a union member when the employer had a concrete interest in the litigation due to its relationship with the union." *Id.* Ultimately, the court concluded that "[h]aving a concrete interest in the litigation means having a share or concern in the litigation, liable to be affected by it." *Id.* at 784. NWA had such an interest, the court decided, because it was concerned with the agreements it would reach in future with the union and also stood to gain from potential divisiveness within the union that could weaken the union's position in future negotiations. *Id.*

Defendants contend that the SMWIA has "a share or concern in the litigation" and is "liable to be affected by it" because it has interest in whether Plaintiffs' actions to further the merger are successful, and those actions could be affected if Plaintiffs are disciplined by the UTU. Should the merger be successful, Defendants argue, "the SMWIA will gain control of the UTU, its employees and all of its assets." Doc. 113-2 at 11. Moreover, the SMWIA "has an interest in protecting its surrogates from possible union discipline for their role in advancing the SMWIA's interests" and it "benefits from divisive litigation that weakens the UTU to force it to an agreement to merge on its terms without a further ratification vote." *Id*; *see Adamszewski*, 496 F.2d at 784. In Defendants' view, if Plaintiffs are disciplined to the point of being expelled from the UTU – or are even demoted within the UTU – their effectiveness as intervenors in the *Michael* litigation may be compromised, as would their ability to act for the SMWIA within the UTU.

8

Plaintiffs strenuously disagree with Defendants' assertion that the SMWIA is an interested employer. First, they note that *Marshall* does not deal with the section of the LMRDA at issue in this case, and that the provision under consideration in *Marshall* separately prohibited labor unions from making contributions. In other words, § 481(g) of the LMRDA specifically and separately names employers and labor unions in prohibiting contributions to union campaigns. Such implicit differentiation would be unnecessary in Plaintiffs' view if labor unions were synonymous with employers under the LMRDA, and the distinction between "employer" and "labor union" in § 481(g) counters Defendants' argument regarding the use of the word "employer" in both §§ 481(g) and 104(a)(4).

Likewise, Plaintiffs reject Defendants' reliance upon *Adamszewski*, claiming that the Seventh Circuit's decision was "explicitly rejected" by the Sixth Circuit's decision in *Verville v. International Association of Machinists*, 520 F.2d 615 (6th Cir. 1975). While Plaintiffs are correct that *Adamszewski* was not followed in *Verville*, the cases are quite different procedurally. A defendant in that matter sought to alter a stipulation reached among the parties by adding as an affirmative defense the claim under LMRDA § 101(a)(4) that an interested employer was funding the plaintiffs' litigation. The parties had agreed to the original stipulation of facts sixteen months before this proposed amendment and had filed motions for summary judgment on the basis of that stipulation. Moreover, the plaintiff had not agreed to the defendant's proposed amendment to the stipulation. The court concluded that it could not alter a stipulation by means of an amendment to which only one party had agreed. On that basis, it did not allow the amendment.

The *Verville* the court was virtually constrained to rule as it did with respect to the proposed affirmative defense: the plaintiffs in the action had not agreed to the proposed change,

which would have negated the "stipulation." The court could not address the merits of the funding question without first deciding the question of whether that issue could even be raised by means of an amendment of the stipulation. Once it answered the procedural question in the negative, the court did not examine the issue further. The only issue on which the *Verville* court explicitly rejected *Adamszewski* is whether the threat of internal union discipline would cause injury to union members seeking to challenge union actions. *Verville*, 520 F.2d at 620.

Plaintiffs further argue that the Sixth Circuit's decision in *Blanchard v. Johnson*, 532 F.2d 1074 (6th Cir. 1976), approved of union support of litigation. In *Blanchard*, the plaintiff employees sought an injunction of a referendum initiated by their union (Local 47), which put before the membership the question of a merger with the International Longshoreman's Association. *Blanchard*, 532 F.2d at 1075. The plaintiffs contended that such a referendum did not allow the membership to consider the alternative of a merger with the Marine Engineers Beneficial Association (MEBA), the union with which the plaintiffs hoped for Local 47 to become affiliated. *Id.* From its inception, the plaintiffs' litigation was handled by an attorney who regularly did legal work for MEBA. *Id.* at 1077. MEBA both introduced the plaintiffs to its attorney and had one of its representatives present when the plaintiffs consulted with that attorney. *Id.*

In considering the question of whether MEBA ought to be permitted to intervene in the litigation, the appellate court concluded that the interests of the plaintiffs and MEBA were "virtually identical," and that MEBA did not need to intervene as its interests were adequately represented by the plaintiffs. *Id.* At no time did the parties argue to the court that MEBA could not fund the plaintiffs' litigation because it was an interested employer under § 101(a)(4) of the LMRDA.

10

Plaintiffs cite to *Blanchard* as evidence that the Sixth Circuit did not consider MEBA an employer, and instead "expressly approved" of MEBA's involvement with the plaintiffs, thereby distinguishing a union from an employer under the LMRDA. *See* Doc. 121 at 5. This citation of *Blanchard*, while possibly instructive in Plaintiffs' favor, is not dispositive, as the procedural posture was quite different from the case at hand, and the direct question of the term "employer" under LMRDA § 101(a)(4) was never presented to the court.

Having argued that the SMWIA is not an employer under LMRDA § 101(a)(4), Plaintiffs also challenge Defendants' contention that the SMWIA is interested in the outcome of this particular action. Plaintiffs argue that, if the SMWIA is interested at all (and they do not concede the point), it is only interested in the *Michael* litigation. While the SMWIA would not want to see union members disciplined in this action solely because of their participation in the *Michael* litigation, the only litigation arguably likely to affect the SMWIA is the *Michael* litigation.

### B. Plaintiffs' rights

In addition to countering Defendant's arguments regarding the interest of the SMWIA and the question of its status as an employer under the LMRDA, Plaintiffs argue that they have a right to act in concert with the SMWIA. Plaintiffs point not only to the freedom to associate protected by the First Amendment, but also to the Savings Clause in the LMRDA, 29 U.S.C. § 413: "Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization." Plaintiffs argue that they have a pre-existing legal right to act in concert with outside unions, which right protects their association with the SMWIA as well as their participation in the *Michael* litigation.

11

In support of this argument, Plaintiffs cite both the district court opinion from *Blanchard*, 388 F. Supp. 208, 215 (N.D. Ohio 1974), and *Steelworkers v. Sadlowski*, 457 U.S. 102.  While Plaintiffs claim that the appellate decision in *Blanchard* adopted the district court opinion in relevant part, it did not adopt that portion quoted by Plaintiffs in their brief in opposition to Defendant's Motion, in which the district court discussed the right of employees to have a choice regarding the affiliation of their union with another union.  *Blanchard*, 388 F. Supp. at 215.  This argument is unpersuasive.

In *Steelworkers*, the court considered whether a union's outsider rule prohibiting contributions to campaigns from "any non-member" would violate the First Amendment or § 101(a)(4) of the LMRDA.  *Steelworkers*, 457 U.S. at 104.  Although the Court held that the outsider rule did not violate the First Amendment (largely because there was a legitimate purpose behind the union's creating the rule), Plaintiffs highlight the following language in the opinion:

> The outsider rule would clearly violate [LMRDA § 101(a)(4)] if it prohibited union members from accepting financial or other support from nonmembers for the purpose of conducting campaign-related litigation.  In our view, however, the outsider rule simply does not apply where a member uses funds from outsiders to finance litigation.

*Id.* at 119.

Plaintiffs argue that the *Steelworkers* decision did not permit any limitations on the support of litigation by outsiders in LMRDA litigation.  Without deciding this issue, the Court would simply note that the prohibition of the outsider rule ("any non-member") was a much broader prohibition than that imposed LMRDA § 101(a)(4) ("interested employer"), and the Supreme Court's decision that the outsider rule would not apply when a union member sought to finance litigation clearly sought to avoid restricting the right of union members to seek funds for litigation from sources other than "interested employers."  The decision does not make any

clearer whether an outside union might be considered an interested employer, nor does it make any clearer Plaintiffs' right to collaborate with an outside union in pursuing litigation.  The citation to *Steelworkers* does not resolve the issue as clearly as Plaintiffs would apparently hope.

They also cite the Supreme Court's decision in *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576 (1971), in which the state bar brought an action for injunction against the Brotherhood of Railroad Trainmen to enjoin any internal union assistance for workers and their families to avoid excessive fees of incompetent attorneys, specifically in suits under the FELA. *Id.* at 577-78.  Not only did the union provide access to a list of qualified attorneys, most of whom were in Chicago (and therefore not part of the state bar in Michigan), but it also provided an assurance that recommended attorneys would not collect in fees any  more than a certain percentage of a union member's recovery.  The Court denied injunctive relief, stating as follows:

> At issue is the basic right to group legal action, a right first asserted in this Court by an association of Negroes seeking the protection of freedoms guaranteed by the Constitution.  The common thread running through our decisions . . . is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment.  However, that right would be a hollow promise if courts could deny associations of workers or others the means of enabling their members to meet the costs of legal representation.

*UTU v. State Bar of Michigan*, 401 U.S. at 585-86.  The plaintiffs made no argument under LMRDA § 101(a)(4).

The major distinction between this decision and the case at bar is that the union members who were receiving union assistance in the Michigan matter were already members of the union whose assistance was at issue.  In this case, Plaintiffs are not yet members of the SMWIA. Plaintiffs cite *In re Primus*, 436 U.S. 412, 424-25 & n. 16 (1978) to suggest that the distinction is

unimportant, but they provide no argument or explanation for their citation, and the Court is at a loss to apply the facts or analysis of *In re Primus* to this matter.

### C. Procedural concerns

On a procedural level, Plaintiffs argue that the Court cannot grant a temporary restraining order/preliminary injunction on the basis of an affirmative defense. In support of this contention, Plaintiffs cite to the Sixth Circuit's decision in *Verville*, 520 F.2d 615. As discussed above, a defendant in that matter sought to alter the stipulation of facts by adding an affirmative defense stating that the plaintiffs' litigation was being financed by an interested employer. *Id.* at 621. The court concluded that it could not alter a stipulation by means of an amendment to which only one party had agreed, and it affirmed the district court's denial of leave to amend. *Id.* at 621-22. Plaintiffs contend that the same reasoning ought to apply here: if it were to grant an injunction on Defendants' affirmative defense, the Court would be saying that the Charging Parties are likely to prevail ultimately in their contention that Plaintiffs cannot prosecute this action because the SMWIA has provided their funding.

The Court acknowledges this difficulty. Defendants have moved this Court to enjoin Plaintiffs from receiving funds from the SMWIA, which is the substance of the affirmative defenses raised by Defendant Futhey and the Charging Parties. Given the procedural posture of this case, the Court is effectively being asked by these Defendants to grant an injunction on the basis that they are likely to succeed in demonstrating that this litigation as a whole cannot proceed because Plaintiffs have received funding in a manner contrary to LMRDA § 101(a)(4).

Further, the hearing on this Motion involved a discussion of the mechanics of what Defendants were asking the Court to do. In effect, granting an injunction in this matter would require that the Court enjoin either the actions of a non-party, or the receipt of funds by Plaintiffs

14

through their legal representative.  Defendants believed that Plaintiffs' counsel acts as Plaintiffs' agent, and could therefore be enjoined from receiving the funds from the SMWIA.  Plaintiffs' counsel represented during the hearing that she would not abandon representation of Plaintiffs even if the Court were to order that she not receive payment from the SMWIA.  (Mot. Hg. Tr. at 27-28).

### D. Balance of factors

The Court finds itself at an impasse, the end result of which must be that Defendants' Motion fails.  The factors it must consider in a request for injunctive relief are "factors to be balanced, not prerequisites that must be met."  *Jones*, 341 F.3d at 476.  Defendant has presented a compelling argument that the SMWIA is an interested employer under LMRDA § 101(a)(4), and that it could prevail on this issue, the first factor of the test for a preliminary injunction.  *See Certified Restoration*, 511 F.3d at 542.  It has made the argument that the SMWIA's interest is directed at the institutional integrity of the UTU, and that legislative history supports the argument that the term "employer" is far-reaching under LMRDA § 101(a)(4).

However, Plaintiff has countered with a convincing argument that a decision enjoining funding from the SMWIA would infringe upon Plaintiffs' rights under the LMRDA and the First Amendment, thereby creating a likelihood of substantial harm to Plaintiffs under the third factor.  *See id.*  Furthermore, given Plaintiffs' counsel's assurance that this matter will proceed regardless of whether any payment is received, and the additional difficulty the Court envisions in attempting to enjoin a non-party, the Court is left to wonder whether the imposition of an injunction in this matter would have any effect at all on Defendants' alleged harm, a necessary consideration under the second factor.  *See id.*

The Court has had a serious concern about the import of fact that the SMWIA is funding this litigation for Plaintiffs.  As it stated during the Motion Hearing in this matter:

> I am very troubled by . . . the fact that they have chosen through the use of proxies to try to assert their claim and/or agenda in this case . . . [T]o be blunt about it, [it] troubles me that an outside party funding litigation could stand in the way of parties resolving their dispute . . . I cannot help but tell you I find that very troubling, troubling in a number of different respects.

Mot. Hg. Tr. at 28, 30.  However, Plaintiffs' counsel addressed the Court's concerns as follows:

> [L]et me be very, very clear as I thought I've been through this case[:] my clients are the individuals, the plaintiffs in this case, the intervenor in the *Michael* case.  I am not a lawyer of the Sheet Metal Workers.  I'm not directed by the Sheet Metal Workers.  I am paid by the Sheet Metal Workers, no different than a lawyer who might be paid by an insurance company to represent one of their clients.

Mot. Hg. Tr. at 31.

In light of this assurance, and given all of the other considerations in this matter, the Court reserves judgment on the question of whether the SMWIA is an interested employer. Defendants have not met their burden under the four factors for granting injunctive relief because they have been unable to convince the Court that such relief would have any effect upon their alleged harm, and the Court is left with equally compelling arguments regarding the likelihood of Defendants' success on the merits and the risk of substantial harm to Plaintiffs' rights. Defendants' Motion is DENIED.

    IT IS SO ORDERED.

DATED:                                      */s/ John R. Adams*_____
                                             Judge John R. Adams
                                             UNITED STATES DISTRICT COURT